1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AWNINDERJIT S.,

          Petitioner,

      v.

KRISTI NOEM, et al.,

          Respondents.

No. 1:25-cv-02000-TLN-SCR

**ORDER**

       This matter is before the Court on Petitioner Awninderjit S.'s[1] ("Petitioner") Ex-Parte Motion for a Temporary Restraining Order ("TRO"). (ECF No. 2.) For the reasons set forth below, Petitioner's Motion is GRANTED.

     **I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

       Petitioner fled India after being persecuted by the Indian Central Government for supporting an opposition party. (ECF No. 2-1 at 4.) Petitioner entered the United States on

---

[1]     As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

1

November 5, 2023.  (ECF No. 1 ¶ 24; ECF No. 2-1 at 3.)  Petitioner was detained within the

United States and had a credible fear interview on November 17, 2023.  (ECF No. 2-3 at 4, 14.)

An asylum officer found Petitioner had demonstrated a credible fear of persecution or torture.

(*Id.* at 1.)  During that interview, he also reported that he has never committed a crime in any

country.  (*Id.* at 31.)  On or about November 27, 2023, removal proceedings were initiated against

Petitioner.  (*Id.*; ECF No. 2-1 at 15.)  Petitioner was ordered to appear before an immigration

judge on December 5, 2023.  (ECF No. 2-3 at 1.)  Petitioner's next immigration hearing is

scheduled for December 31, 2025, at Adelanto, California.  (ECF No. 2-1 at 4.)

On November 3, 2025, Petitioner was arrested by U.S. Immigration and Customs

Enforcement ("ICE") officials in Stockton, California.  (ECF No. 1 ¶ 24.)  Prior to his arrest,

Petitioner had been living in Manteca, California and had built strong ties to the local Sikh

community.  (ECF No. 2-1 at 3–4.)  He had also worked as a cashier at 7-11.  (*Id.* at 4.)

Following his detention, an immigration judge stated she was unable to consider

Petitioner's bond request in light of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

(*Id.*)

Petitioner remains in custody at the California City Correctional Facility in California

City, California.  (ECF No. 2-1 at 2.)  On December 24, 2025, Petitioner filed a writ of habeas

corpus challenging the legality of his detention.  (ECF No. 1.)  The same day, Petitioner filed a

TRO.  (ECF No. 2.)

## II.    STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established: "[1] that he is likely to

succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a

showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh

petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger

showing on the balance of the hardships may support issuing a TRO even where the petitioner

1   shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows

2   that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.*

3   Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were

4   raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to

5   succeed in a request for a TRO. *Id.* at 1134–35.

6       **III.**    **ANALYSIS**[2]

7           A.    Likelihood of Success on the Merits

8       Petitioner has established a likelihood of success on his claims that his detention violates

9   both the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.

10   The Court examines each claim in turn.

11             *i.  Violation of the INA*

12       First, Petitioner has established a likelihood of success on his claim that he is unlawfully

13   detained under 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)").  Section 1225(b)(2) mandates detention

14   during removal proceedings for applicants "seeking admission" and does not provide for a bond

15   hearing.  Whereas 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting

16   and detaining [noncitizens] who are present in the United States and eligible for removal."

17   *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the

18   Government has broad discretion whether to release or detain the individual.  *Id.*  Further, §

19   1226(a) provides several layers of review for an initial custody determination.  *Id.*  It also confers

20   "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by

21   counsel and to present evidence, the right to appeal, and the right to seek a new hearing when

22   circumstances materially change."  *Id.* at 1202.

23

24       [2]     The Court finds Petitioner has met the requirements for issuing a temporary restraining

25   order without notice.  *See* Fed. R. Civ. P. 65(b).  Petitioner has filed the requisite affidavits and
notified Respondents via mail on December 24, 2025 that he would be filing the motion.  (ECF

26   No. 2 at 4.)  *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255,
at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met without notice);

27   *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025)
(same).

28

1    Petitioner claims the text and legislative history of the INA demonstrates that 8 U.S.C. §

2    1226(a) governs his detention — not 8 U.S.C. § 1225.  (ECF No. 2-1 at 5–15.)  The Court agrees.

3    As this Court has found repeatedly, Section 1225(b)(2) applies only to noncitizens "seeking

4    admission" — a category that does not include noncitizens like Petitioner who were detained

5    within the United States.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL

6    3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this

7    position).  Absent a higher court order holding otherwise, this Court finds Petitioner is not an

8    applicant "seeking admission" subject to mandatory detention under § 1225(b)(2).  Petitioner is

9    instead subject to § 1226(a) and is therefore entitled to the process that statute requires, including

10   a bond hearing at a minimum.  Yet, Respondents have not provided any hearing to Petitioner in

11   his nearly two months of civil detention.  Accordingly, Petitioner is likely to succeed on the

12   merits of his claim that Respondents have violated the INA and improperly subjected him to

13   mandatory detention without a hearing.

14                          *ii.   Violation of Due Process*

15   Second, Petitioner has demonstrated a likelihood of success on his Fifth Amendment Due

16   Process claim.  The Fifth Amendment Due Process Clause prohibits government deprivation of

17   an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872

18   F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the

19   borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678,

20   693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States,

21   including noncitizens, whether their presence here is lawful, unlawful, temporary, or

22   permanent.").  These due process rights extend to immigration proceedings.  *Id.* at 693–94.

23   Courts examine procedural due process claims in two steps: the first asks whether there

24   exists a protected liberty interest under the Due Process Clause, and the second examines the

25   procedures necessary to ensure any deprivation of that protected liberty interest accords with the

26   Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

27   *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

28   the question remains what process is due.").

4

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released from custody. (ECF No. 2-1 at 17.) Under *Morrissey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Moreover, for approximately two years, Petitioner built a life in the United States. (*Id.*) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

1    the function involved and the fiscal and administrative burdens that the additional or substitute

2    procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set

3    forth below, the Court finds Petitioner has established his due process rights were likely violated.

4         First, Petitioner has a substantial private interest in remaining free from detention.  As

5    discussed above, Petitioner was out of custody for approximately two years and had built a life

6    and community in California.  Despite that, Petitioner has now been detained for almost two

7    months without being afforded a bond hearing.  Accordingly, this factor weighs in favor of

8    finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v.*

9    *Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025)

10   (finding similarly).

11        Second, the risk of erroneous deprivation is considerable given Petitioner has not received

12   any bond hearing despite nearly two months in custody.  "Civil immigration detention, which is

13   nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger

14   to the community." *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted).

15   Petitioner has represented he has never committed a crime in any country, which an asylum

16   officer found credible, and the record does not show Petitioner has been found to present a flight

17   risk or danger to the community.  (ECF No. 2-3 at 31.)  Given this, the Court finds there is a

18   serious likelihood Petitioner will be erroneously deprived of his liberty interest.  Moreover,

19   without any procedural safeguards to determine whether his detention was justifiable, the

20   probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

21        Finally, the Government's interest is low, and the effort and cost required to provide

22   Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-

23   TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Petitioner claims that the

24   Respondents' own regulations require notice and a pre-deprivation hearing, which they did not

25   provide.  (ECF No. 2-1 at 19.)  Indeed, it would be less of a fiscal and administrative burden for

26   the Government to return Petitioner home to await a determination on his immigration

27   proceedings than to continue to detain him.

28        On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due

1  process: a hearing to determine whether detention is warranted.  Accordingly, with respect to his

2  due process claim, Petitioner has shown he is likely to succeed on the merits.

3                                 B.    <u>Irreparable Harm</u>

4          Petitioner has also established he will suffer irreparable harm in the absence of a TRO.

5  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration

6  detention," including "the economic burdens imposed on detainees and their families as a result

7  of detention[.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner has been

8  detained for almost two months without a bond hearing and "[i]t is well established that the

9  deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v.*

10  *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

11                               C.    <u>Balance of Equities and Public Interest</u>

12          As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the

13  balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F.

14  Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092

15  (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities

16  tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed

17  in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S.*

18  *Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public

19  interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002.

20  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention

21  are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June

22  14, 2025) (internal citation omitted).

23          In sum, these last two factors weigh in Petitioner's favor.  Therefore, the Court GRANTS

24  Petitioner's Motion for a TRO.  (ECF No. 2.)

25        **IV.**   **CONCLUSION**

26          Accordingly, IT IS HEREBY ORDERED:

27    1.  Petitioner's Motion for a Temporary Restraining Order (ECF No. 2) is GRANTED.

28    2.  Respondents must IMMEDIATELY RELEASE Petitioner Awninderjit S. from custody.

Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have his counsel present.

4. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing this order.  Respondents shall file responsive papers by **Wednesday, December 31, 2025**.  Petitioner may file a reply, if any, by **Tuesday, January 6, 2026**.  **The parties shall indicate in their briefing whether they waive a hearing**.  Fed. R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

5. Petitioner is ORDERED to immediately serve this Temporary Restraining Order and Order to Show Cause on Respondents at usacae.ecf2241-imm@usdoj.gov.  Petitioner shall file proof of such service no later than **10 a.m. on December 25, 2025.**

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the Temporary Restraining Order on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4).

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

8. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initial.

//

//

//

1          IT IS SO ORDERED.

2    Date: December 24, 2025

3

4    _____
     TROY L. NUNLEY
5    CHIEF UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28