UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AWNINDERJIT S., | No. 1:25-cv-02000-TLN-SCR |
| Petitioner, | |
| v. | **ORDER** |
| KRISTI NOEM, et al., | |
| Respondents. | |

On December 24, 2025, the Court granted Petitioner Awninderjit S.'s ("Petitioner") Motion for a Temporary Restraining Order ("TRO") and ordered Respondents to show cause why this Court should not issue a preliminary injunction on the same terms. (ECF No. 4.) On December 30, 2025, Respondents filed a response. (ECF No. 8.) For the reasons set forth below, the Court issues a preliminary injunction.

///
///
///
///
///

1

**I.     FACTUAL AND PROCEDURAL BACKGROUND**[1]

Petitioner fled India after being persecuted by the Indian Central Government for supporting an opposition party.  (ECF No. 2-1 at 4.)  Petitioner entered the United States on November 5, 2023.  (ECF No. 1 ¶ 24; ECF No. 2-1 at 3.)  Petitioner was detained within the United States and had a credible fear interview on November 17, 2023.  (ECF No. 2-3 at 4, 14.)  An asylum officer found Petitioner had demonstrated a credible fear of persecution or torture.  (*Id.* at 1.)  During that interview, he also reported that he had never committed a crime in any country.  (*Id.* at 31.)  On or about November 27, 2023, removal proceedings were initiated against Petitioner.  (*Id.*; ECF No. 2-1 at 15.)  Respondents state Petitioner was also released on parole and placed on Alternative to Detention ("ATD") Intensive Supervision Appearance Program ("ISAP").  (ECF No. 8 at 2.)  Petitioner was ordered to appear before an immigration judge on December 5, 2023.  (ECF No. 2-3 at 1.)

On November 3, 2025, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") officials in Stockton, California.  (ECF No. 1 ¶ 24.)  Respondents claim Petitioner was taken into custody due to three prior ATD violations.  (ECF No. 8 at 2.)  Prior to his arrest, Petitioner had been living in Manteca, California and had built strong ties to the local Sikh community.  (ECF No. 2-1 at 3–4.)  He had also worked as a cashier at 7-11.  (*Id.* at 4.)

Following his detention, an immigration judge stated she was unable to consider Petitioner's bond request in light of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  (*Id.*)

On December 24, 2025, Petitioner filed a writ of habeas corpus challenging the legality of his detention.  (ECF No. 1.)  Petitioner also filed a TRO challenging the constitutionality of his detention.  (ECF No. 2.)  The Court subsequently issued a TRO requiring Petitioner's immediate release and further enjoining and restraining Respondents from re-arresting or re-detaining Petitioner absent compliance with constitutional protections.  (ECF No. 4.)  The Court now

---

[1]     Respondents do not dispute the facts provided by Petitioner and set forth in this Court's prior order.  (*See generally* ECF No. 4.)  As such, these facts are reiterated almost verbatim here for clarity.

determines whether the relief contained in the TRO should continue as a preliminary injunction.

## II.   STANDARD OF LAW

For a preliminary injunction, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor to issue the requested preliminary injunction.  *Id.* at 1134–35.

## III.   ANALYSIS

This Court previously found that Petitioner established a likelihood of success on each of the *Winter* elements sufficient to warrant relief as set forth in the TRO.  (ECF No. 4.) Specifically, the Court found Petitioner had established a likelihood of success on his claims that his detention violated the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.  (*See generally id.*)

Now, in response to the Order to Show Cause, Respondents argue this Court should not convert the TRO into a preliminary injunction because Petitioner is not subject to 8 U.S.C. § 1226, but instead subject to mandatory detention under 8 U.S.C. § 1225(b)(1) ("§ 1225(b)(1)").[2]

---

[2]   Additionally, Respondents argue Petitioner is not a member of the class certified in *Maldonado Bautista v. Santacruz*, 5:25cv-01873-SSS-BFM (C.D. Cal.).  (ECF No. 8 at 4.) Because this argument does not impact the Court's analysis at this time, the Court does not address it.

3

1  (ECF No. 8 at 3–4.)  Respondents do not address Petitioner's Due Process claim.  (*See generally*
2  *id.*)

3  Respondents' argument does not change this Court's ultimate determination that a
4  preliminary injunction is warranted.  Section 1225(b)(1) provides a process for detention and
5  expedited removal of certain "aliens arriving in the United States and certain other aliens who
6  have not been admitted or *paroled*."  8 U.S.C. § 1225(b)(1) (emphasis added).  Here, as
7  Respondents clarify in opposition, after Petitioner received a credible fear interview, Petitioner
8  was released on parole.  (ECF No. 8 at 2.)  Therefore, the Court is unpersuaded by Respondents'
9  position that § 1225(b)(1) applies at this juncture and mandates Petitioner's detention.

10  Additionally, even if Respondents' statutory interpretation were correct, the Court finds
11  Petitioner is still likely to succeed on his Fifth Amendment Due Process claim.  *See e.g.*,
12  *Tigranyan v. Warden of California City Detention Facility*, No. 1:25-CV-01554-DJC-SCR, 2026
13  WL 91765, at *4 (E.D. Cal. Jan. 13, 2026), *report and recommendation adopted*, No. 1:25-CV-
14  01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026) (noting mandatory detention
15  statutes like § 1225(b)(1) are still subject to constitutional limitations).  As this Court held
16  previously and is worth reiterating here, Petitioner gained a liberty interest in his continued
17  freedom when he was released.  (ECF No. 4 at 5; ECF No. 2-1 at 17.)

18  Under the Supreme Court's decision in *Morrisey v. Brewer*, this release implied a promise
19  that he would not be re-detained, during the pendency of his immigration proceedings if he
20  abided by the terms of his release.  408 U.S. 471, 482 ("[T]he government's decision to release an
21  individual from custody creates 'an implicit promise,' upon which that individual may rely, that
22  their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].")
23  Respondents' arguments do not engage with this fact nor convince this Court to alter its prior
24  analysis on this claim.  Respondents state Petitioner was taken into ICE custody due to three prior
25  ATD violations — three consecutive missed biometric check-ins.  (ECF No. 8 at 2, 17.)
26  Respondents do not state when these violations occurred, nor how they became aware of them.
27  (*See id.*)

28  Even if Petitioner's arrest was solely motivated by ICE's sudden realization that Petitioner

4

1    had three ATD violations, this does not relinquish Respondents' responsibility and obligation to
2    detain Petitioner in a manner that comports with due process.  *See E.A. T.-B. v. Wamsley*, 795 F.
3    Supp. 3d 1316, 1322 (W.D. Wash. 2025) (finding similarly).  Here, the manner in which
4    Petitioner was re-detained did not comport with due process.  First, the record indicates that upon
5    receiving instructions to report to the ICE office in Stockton, Petitioner complied, thereby
6    undermining any argument Petitioner posed a flight risk.  (ECF No. 2 at 17); *see also Ramirez*
7    *Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (finding petitioner's
8    immediate attempt to remediate potentially 40 ATD violations undermined the Government's
9    argument that petitioner was a flight risk).  Second, when Petitioner reported to ICE's office, he
10   was interviewed by two ICE Deportation Officers who informed Petitioner he was being taken
11   into custody due to ATD violations.  (*Id.*)  Such an interview does not constitute a hearing before
12   a neutral adjudicator prior to detention, where Petitioner could contest these apparent violations.
13   *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1033 (N.D. Cal. 2025) (finding ICE could
14   not unilaterally re-detain petitioner without a hearing based solely on ICE's determination that
15   petitioner had violated his conditions of release).  As such, the Court finds no reason to deviate
16   from its prior conclusion that Petitioner has sufficiently established he is likely to succeed on his
17   Fifth Amendment Due Process claim.
18       Finally, Respondents do not challenge Petitioner's arguments as to the remaining *Winter*
19   factors for irreparable harm, balance of equities, and public interest.  Because the standard for
20   issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction,
21   *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), the
22   Court incorporates its reasoning from the TRO on these remaining factors and does not duplicate
23   its analysis here.
24       **IV.    CONCLUSION**
25       In sum, to prevent further irreparable harm, the Court issues a preliminary injunction.  IT
26   IS HEREBY ORDERED that:
27       1. Respondents are ENJOINED AND RESTRAINED from imposing any additional
28          restrictions on Petitioner Awninderjit S., unless such restrictions are determined to be

5

1 | necessary at a future pre-deprivation/custody hearing.

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation/custody hearing before a neutral decisionmaker, where the Government shall bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk, and Petitioner shall be allowed to have his counsel present.

3. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

4. This matter is referred back to the United States Magistrate Judge for a determination on the merits.

IT IS SO ORDERED.

Date: January 23, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE